UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VALERIE RENEE LOWERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-1217-GMB |
| | ) | |
| WALTER RUSSELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Valerie Renee Lowery filed a complaint against her employer, the Jefferson County Racing Association ("JCRA"), and her supervisors, Walter Russell and Kelly Hadley.[1] Doc. 1 at 2; Doc. 18 at 1–2.  Lowery, who is representing herself in this action, alleges employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. Doc. 1 at 3–4.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 20.  Before the court is the defendants' Motion to Dismiss. Doc. 11.  The motion is fully briefed (Docs. 11, 16, 22) and ripe for decision.  For the reasons that follow, the motion is due to be

---

[1] After the defendants noted that Lowery either misspelled their names or misidentified them (Doc. 11 at 1), Lowery amended her complaint to correct each name. *See* Doc. 16 at 1; Doc. 17 at 2; Doc. 18 at 1–2.  In particular, Lowery changed "Kellie Hadley" to "Kelly Hadley." *See* Doc. 16 at 1; Doc. 17 at 2.  The defendants maintain the correct spelling is "Kelly Headley." Doc. 11 at 1. The court nevertheless adopts the spelling in Lowery's amended complaint.

granted.[2]

# I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In considering a motion to dismiss under Rule 12(b)(6), the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007).  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me

---

[2] While the defendant's motion to dismiss was pending, Lowery filed documents titled "Identifying Each Issue or Discovery" (Doc. 23) and "Notice Documents FLMA" (Doc. 24).  The defendants moved to strike these documents from the record and requested an order staying discovery. Doc. 25.  The court will not consider these filings in deciding the motion to dismiss and will moot the motion to strike because all of Lowery's claims are due for dismissal.

accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

Generally, a court looks only to the face of the complaint when deciding a Rule 12(b)(6) motion. And "[w]hen a court considers matters outside of the pleadings," it typically converts the Rule 12(b)(6) motion into a motion for summary judgment. *Johnson v. Unique Vacations, Inc.*, 498 F. App'x 892, 894 (11th Cir. 2012). However, conversion is not always necessary. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, LTD. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see Edmonds v. Southwire Co.*, 58 F. Supp. 3d 1347, 1351–52 (N.D. Ga. 2014) (finding that the court could consider documents attached to a *pro se* complaint because they provided helpful factual support, and the defendant challenged the legal sufficiency of the documents but not their authenticity).

Here, Lowery attaches multiple documents to her *pro se* complaint form,

3

including her filings with the Equal Employment Opportunity Commission ("EEOC") and emails that contain facts supporting her claims. *See* Docs. 1, 1-1, 1-2, 1-3.  The court finds that these documents are central to Lowery's claims.  And the defendants do not dispute the authenticity of these documents; in fact, they admit Lowery's attachments provide clarifying details and are consistent with her complaint. Doc. 11 at 2 n.3.  The court therefore will consider Lowery's attachments without converting the defendants' motion to dismiss into a motion for summary judgment.

## II.  RELEVANT FACTS

In November 2023, the JCRA hired Lowery to work in customer service, a job that required her to "stand and walk the floor." Doc. 1-1 at 10; Doc. 1-2 at 21. Soon afterwards, Hadley, the JCRA director, noticed that Lowery limped while walking. Doc. 1-1 at 10.  By December 2023, the JCRA allowed Lowery to work some shifts as a clerk in the "cash cage" or in "players awards." Doc. 1-2 at 5, 7. And she requested more shifts in those positions "[d]ue to [her] chronic knee pain." *See* Doc. 1-2 at 16.   In March 2024, Lowery made a formal request for accommodations and provided the JCRA with a note from a nurse practitioner, who explained that Lowery suffered from "osteoarthritis and degenerative disc disease in her knees" and should not spend more than 30 minutes at a time on her feet or lift over 20 pounds. Doc. 16 at 4; Doc. 1-1 at 10.  Lowery continued to work shifts in

4

the cage, where she "was able to perform [her] duties and proved to be viable and effective." Doc. 1-1 at 10. These duties included balancing the register to ensure she had "a zero balance at the end of the shift." Doc. 1 at 10. If an employee's register comes up short, the JCRA deducts that amount from the employee's paycheck. Doc. 1 at 8.

On June 2, 2024, one of Lowery's supervisors, Roxann Cox, told Lowery that her register was over by $115 for the day. Doc. 1 at 5. Russell, a manager, interrupted Lowery and Cox to accuse Lowery "of taking money from customers," which Lowery denied. Doc. 1 at 5, 10. Russell was mad about the disagreement, and he later told Kimberly Skipper to remove Lowery from the cage. Doc. 1 at 6, 10. Eventually, however, he agreed to give Lowery another chance in that position. Doc. 1 at 5, 10.

During the following week, Lowery received similar complaints from her managers about problems in balancing her register at the end of her shifts. Doc. 1 at 6. For example, after her shift on June 6, Wendy Seibert told Lowery she was short by $1.34. Doc. 1 at 6. The next morning, Seibert contacted her again and told her she had been short by $51 at the end of her shift on June 7. Doc. 1 at 6 & 10. Lowery responded by detailing where Seibert could find the "missing $55," which Seibert eventually found. Doc. 1 at 6, 10; Doc. 1-2 at 2. Later that day, Russell decided to move Lowery out of the cage and back to the customer service floor indefinitely.

Doc. 1 at 6.  Skipper told Lowery that "the reason [Lowery] could no longer work in the cage was due to money being over and under (not balance[d])." Doc. 1 at 6. In total, the JCRA withheld $54.31 from Lowery's paycheck for imbalances while working the cage. Doc. 1 at 8.

Lowery was not the only employee who struggled to balance the register. "[S]ome employees [were] over and short several thousand dollars" but remained in the cage and did not face any disciplinary action. Doc. 1 at 10.  And from December 2023 to June 2024, at least nine other employees—four white and five Black—were short or over during shifts. Doc. 1 at 6.  Cox, a white woman, was removed from the cage in August 2024 because "she was always short." Doc. 1 at 7.  Another white woman, Julie Fisher, was short about one thousand dollars, and she was suspended then moved to the customer service floor. Doc. 1 at 7.

After Russell placed Lowery back on the customer service floor, Lowery "explained that [she] could not work the floor due to [her] disability and need for accommodation." Doc. 1-1 at 10.  Hadley told Lowery that she had "no available position for [Lowery] to sit down" and that "there were no other positions that could accommodate [Lowery's] disability." Doc. 1 at 10.  For this reason, Hadley "had no work available for [Lowery] to work on June 8, 2024 or June 9, 2024," so she left Lowery off the schedule. Doc. 1 at 10.

Sometime in the next couple of days, Lowery reached out to the Human

discrimination claims. Doc. 1.  She explained that she is "an African American with a disability," and when asked to describe the basis of her discrimination, she listed "race," "color," and "disability or perceived disability." Doc. 1 at 5.  She claims that the JCRA "refused to put [her] back on schedule," so she is "requesting back pay from 6/6/24 up until now," "pain and suffering," and "attorney and court cost fees." Doc. 1 at 5.

## III.  DISCUSSION

### A.    Hadley and Russell

As an initial matter, the claims against Hadley and Russell are due to be dismissed.   Relief under Title VII and the ADA is available against only the employer, and therefore "individual employees are not subject to liability under either Title VII or the ADA." *Fodor v. D'Isernia*, 506 F. App'x 965, 966 (11th Cir. 2023) (citing *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007)).   Therefore, Lowery cannot bring claims against Russell and Hadley in their individual capacities.

Any claims against these defendants in their official capacities fare no better. While an ADA or Title VII plaintiff may sue supervisors in their official capacities in some circumstances, this is not one of those circumstances. "If the employer is already a defendant, claims against the supervisory employee in her official capacity are redundant." *Davis v. Infinity Ins. Co.*, 2016 WL 4507122, at *18 (N.D. Ala. Aug.

29, 2016) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)); *see Waters v. Baldwin County*, 936 F. Supp. 860, 866–67 (S.D. Ala. 1996). Because the JCRA is a defendant here, any official capacity claims against Hadley or Russell cannot survive the motion to dismiss.

## B.    JCRA

Liberally construing Lowery's *pro se* complaint, the court understands Lowery's claims against the JCRA to be for (1) race, color, and disability discrimination in violation of Title VII and the ADA, respectively; and (2) retaliation under Title VII and the ADA.

### 1.    Discrimination

The JCRA argues that Lowery's discrimination claims under Title VII are deficient because she has not (1) plausibly alleged racial discrimination or (2) administratively exhausted her color discrimination claim. Doc. 11 at 2 n.2 & 8–10. The JCRA also argues that Lowery's disability discrimination claim is deficient because she has not alleged that the JCRA failed to accommodate her disability. Doc. 11 at 7–8.

#### a.    Race Discrimination Under Title VII

The JCRA maintains that Lowery has not plausibly alleged that her removal from the cash cage was because of her race. Doc. 11 at 9. Title VII prohibits employers from discriminating against an employee because of the employee's race.

42 U.S.C. § 2000e-2(a). To state a claim for race discrimination, a complaint need only provide enough factual matter to "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245–46 (11th Cir. 2015); *see also Love-Bevelle v. Bessemer City Bd. of Educ.*, 2020 WL 13662378, at *4 (N.D. Ala. Aug. 14, 2020) (citing *Iqbal*, 556 U.S. at 679) ("[A] plaintiff must allege a fact from which the court, using common sense and judicial experience, can reasonably infer that the plaintiff's race was a motivating factor in . . . the challenged action.").

In determining whether a complaint meets this standard, the traditional methods of proving Title VII claims are "helpful guides to the determination of the issue." *Jaffe v. Birmingham Gastro. Assocs., P.C.*, 2021 WL 4220356, at *2 (N.D. Ala. Sept. 16, 2021). These methods of proof are direct evidence of discrimination, the "convincing mosaic" of circumstantial evidence, and the *McDonnell Douglas* framework. *Id.* (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). While relevant at the motion-to-dismiss stage, these methods are not dispositive, and the key question is whether the complaint plausibly suggests intentional discrimination. *Id.* (citing *Surtain*, 789 F.3d at 1246).

Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of discrimination by showing that (1) she is a member of a protected group; (2) she was qualified for the job in question; (3) she was subjected to an adverse employment

10

action; and (4) she was treated less favorably than a similarly situated individual outside of her protected group—a "comparator." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019).   While not required, "alleging a comparator outside the plaintiff's class is a common thread among those discrimination claims that survive a motion to dismiss." *Jaffe*, 2021 WL 4220356, at *3 (citing cases).   The comparison is effective if it shows that the employer has "treat[ed] like cases differently." *Id.* (citing *Lewis*, 918 F.3d at 1222).

Lowery's only attempt at showing intentional racial discrimination in her complaint is her identification of other employees who did not balance their registers in the cash cage. *See* Doc. 1 at 6–7.   Specifically, she identifies Fisher, a white woman who "was short $1,200" while working in the cage, and Cox, another white woman who "was always short." Doc. 1 at 7.   But she explains that the JCRA placed Fisher on suspension and removed both women from the cage.[3] Doc. 1 at 7.   Because Fisher and Cox were removed from the cage for unbalanced registers, like Lowery, the complaint does not show that the JCRA treated similarly situated employees

---

[3] Lowery alleges that Fisher's suspension and removal from the cage came after the JCRA "received [Lowery's] letter." Doc. 1 at 7.   Lowery does not provide any additional information about this letter or its contents and does not explain whether the letter in question is included in her 82 pages of exhibits. *See* Docs. 1, 1-1, 1-2, 1-3; *see also* Doc. 16.

differently.[4] *See Jaffe*, 2021 WL 4220356, at *3.  And while the simple failure to allege a comparator does not always mandate dismissal, *see id.*, Lowery's complaint does not include any other factual allegations that would give the court a basis on which to find plausible race discrimination under Title VII.  In fact, the only other mention of race in Lowery's complaint is the identification of her own race. Doc. 1 at 8.  Accordingly, Lowery's Title VII discrimination claim will be dismissed without prejudice.

### b.   Color Discrimination Under Title VII

It is apparent that Lowery intended to bring a race discrimination claim in both her complaint and her EEOC charge; the court cannot say the same for her color discrimination claim.[5]  The JCRA argues that "[t]o the extent this claim is separate from Plaintiff's race claim, it is due to be dismissed for failure to exhaust

---

[4] In response to the motion to dismiss, Lowery contradicts her complaint by stating that the JCRA disciplined and removed Fisher and Cox from the cage for reasons other than an inability to balance their cash drawers. Doc. 16 at 20.  "However, Plaintiff cannot supplement the allegations of the Complaint through a brief in response to a motion to dismiss, and Plaintiff certainly cannot contradict the allegations in the Complaint with a response to a motion to dismiss." *Daughtry v. Graham Shrimp Co., Inc.*, 2024 WL 231849, at *2 (S.D. Ala. Jan. 22, 2024) (quoting *Ramirez v. City of Ft. Lauderdale Fire Rescue*, 2019 WL 13235809, at *2 (S.D. Fla. Apr. 29, 2019)) (cleaned up); *see Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  The court will not consider the contradictory facts included in Lowery's response brief.

[5] "When a person alleges that she was treated different than someone of another race and color," she often "mean[s] that [she was] the victim of racial discrimination." *Reeves v. Columbus Consol. Gov.*, 2021 WL 5451146, at *2 (M.D. Ga. Nov. 22, 2021).  Some courts therefore construe race and color discrimination claims as exclusively race claims. *See id.* (citing *Landry v. Lincare, Inc.*, 579 F. App'x 734, 737 (11th Cir. 2014)).  Although the briefing here suggests that Lowery may have intended her race and color to be synonymous, *see* Docs. 1 & 16, the court will analyze these as separate claims because of her *pro se* status.

administrative remedies." Doc. 11 at 2 n.2.  The court agrees.

Before a plaintiff files a Title VII action, she "first must file a charge of discrimination with the EEOC." *Gregory v. Ga. Dept. of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  Because the purpose of the exhaustion requirement is to ensure that the EEOC has "the first opportunity to investigate the alleged discriminatory practices," the EEOC charge generally must contain all claims or grounds that the plaintiff later incorporates into the Title VII suit. *Id.* (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  Additional claims may be filed in the district court only if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint and are "related to" or "grew out of" those allegations. *Reeves v. Columbus Consol. Gov.*, 2021 WL 5451146, at *3 (M.D. Ga. Nov. 22, 2021) (quoting *Gregory*, 355 F.3d at 1279–80).  On the other hand, "allegations of new acts of discrimination are inappropriate." *Id.* (quoting *Gregory*, 355 F.3d at 1279–80).

Title VII explicitly recognizes separate claims for race and color discrimination. 42 U.S.C. § 2000e-2(a); *Reeves*, 2021 WL 5451146, at *2–3. Discrimination against a person based on her pigmentation, complexion, or skin shade "may give rise to a 'color' discrimination claim, but not a 'race' discrimination claim." *Reeves*, 2021 WL 5451146, at *2.  Therefore, when a plaintiff intends to bring a color discrimination claim, she must at least "hint that [her] particular skin

13

tone motivated the alleged discrimination" in her EEOC charge. *Id.* (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.5 (4th Cir. 2002)).

Again, Lowery's complaint does not make clear whether she intended to bring a color discrimination claim that is separate from her race discrimination claim. She makes no mention of color in her complaint aside from checking a box for "color" when asked for the basis of her discrimination.[6] *See* Doc. 1 at 5. Regardless of her intent, Lowery did not administratively exhaust this claim. Her EEOC charge only alleges race and disability discrimination, and there are no facts tending to show that her pigmentation, complexion, or skin shade motivated the JCRA's decisions. *See* Doc. 1-1. Therefore, any color discrimination claim Lowery raises in her complaint is outside of the scope of her EEOC charge, and the court will dismiss this claim without prejudice for Lowery's failure to exhaust it.

### c.    Disability Discrimination Under the ADA

In addition to her Title VII discrimination claims, Lowery alleges that the JCRA violated the ADA by failing to accommodate her disability. Doc. 1 at 4, 10. The ADA prohibits covered entities from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). And an "employer

---

[6] In Lowery's response to the motion to dismiss, she claims that she was "discriminated on the basis of her race, color, and disability," *see* Doc. 16 at 2, but again does not explain any basis for a separate and distinct color claim.

14

unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a failure-to-accommodate claim under the ADA, a plaintiff must allege facts plausibly suggesting that (1) she "is disabled;" (2) she is "a qualified individual, meaning she is able to perform the essential functions of the job;" and (3) she was "discriminated against because of [her] disability by way of the defendant's failure to provide a reasonable accommodation." *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016).

While a "reasonable accommodation" may include adjustments like job restructuring, modified work schedules, or reassignment to a vacant position, 42 U.S.C § 12111(9)(B), not every requested accommodation is a reasonable one. *See Stewart v. Happy Herman's Cheshire Br., Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) ("[T]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires.") (quotation marks omitted). Instead, "[a]n accommodation is reasonable only if it enables the qualified individual to perform the essential functions of the job." *Dorsey v. Joe Piper, Inc.*, 2021 WL 3421393, at *2 (N.D. Ala. 2021) (citing *Holly v. Clairson Indus.*, 492 F.3d

1247, 1256 (11th Cir. 2007). A complaint may survive a motion to dismiss without "detailed factual allegations," *Twombly*, 550 U.S. at 555, but the plaintiff still must provide some facts plausibly suggesting that she requested a sufficiently specific accommodation; that the requested accommodation was reasonable, or at the very least plausible; and that the accommodation will help her perform the essential functions of her job. *See, e.g.*, *Dorsey*, 2021 WL 3421393, *Cabrera Mejia v. Wal-Mart*, 2014 WL 5531432, at *2–3 (M.D.N.C. Nov. 3, 2014), *aff'd*, 599 F. App'x 520 (4th Cir. 2015), *cert. denied*, 577 U.S. 900 (2019); *see also EEOC v. Advanced Home Care, Inc.*, 305 F. Supp. 3d 672, 676 (M.D.N.C. 2018) (denying a motion to dismiss where the plaintiff "alleged sufficient detail about the requested accommodation and how [she] could have performed the essential functions of her position").

For example, in *Cabrera Mejia*, 2014 WL 5531432, at *2–3, the district court dismissed a complaint where the *pro se* plaintiff's only alleged "request for accommodation" was that he asked his employer to "fix the problem" after learning of his anxiety and depression. The plaintiff also claimed that "he could have 'come back to work' if the problem was fixed." *Id.* at *3. But "[b]eyond that vague allegation, the complaint offer[ed] no details as to whether the requested accommodation was plausible or even what it was." *Id.* at *3. Similarly, the plaintiff "fail[ed] to provide even the most basic details about his job, let alone that he could have performed its essential functions." *Id.* Without these basic details, the court

16

concluded that the plaintiff did not allege that he could have performed the essential functions of his job with a reasonable accommodation. *Id.*

Even a plaintiff identifying a specific accommodation must demonstrate how the accommodation would help him to perform the essential functions of his job. In *Dorsey*, 2021 WL 3421393, at *2, a deaf employee claimed that his employer refused to accommodate his deafness. While the employee made a specific request for an interpreter, he failed to "plead facts that would show that [he] needed the certified interpreter to perform the essential functions of Machine Helper." *Id.* The court therefore dismissed the employee's complaint for failing to allege any fact that "would show his request for an interpreter was a reasonable accommodation." *Id.*

Like the employees in *Cabrera Meija* and *Dorsey*, Lowery has not alleged sufficient facts to show that she requested but did not receive a reasonable accommodation that would have helped her to perform the essential functions of her job. *See* Docs. 1, 1-1, 1-2, 1-3. In fact, the only function of her customer service job she mentioned in the complaint is the need to "stand and walk the floor." Doc. 1-1 at 10; Doc. 1-2 at 21. Lowery does not claim that she requested an accommodation to help her perform this task despite her osteoarthritis and degenerative disc disease. She only requests to be put back in the cash cage or to work shifts in unidentified but "viable" positions "based on [her] disability." *See* Doc. 1 at 10. This is not

enough to survive a motion to dismiss.[7]

### 2.    *Retaliation*

While it is unclear whether Lowery predicates her retaliation claim on Title VII or the ADA, the court employs the same framework for ADA retaliation claims as it does for Title VII retaliation claims. *See Stewart*, 117 F.3d at 1287.  Both provisions prohibit discrimination against an individual because she has "opposed any act or practice made unlawful" under Title VII or the ADA. *Id.*; *see Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  To state a retaliation claim, the plaintiff must plausibly allege that: (1) she participated in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between her participation in the protected activity and the adverse employment decision. *Stewart*, 117 F.3d at 1287.

The first element, statutorily protected activity, occurs when an employee complains of unfair treatment due to her membership in a protected class. *See Cox v. Fulton County Sch. Dist.*, 2022 WL 22308805, at *32–33 (N.D. Ga. Jan. 21, 2022);

---

[7] In Lowery's response to the motion to dismiss, she writes that the "[JCRA] could have put [her] back on schedule to work in the player awards." Doc. 16 at 29.  Aside from including an email purportedly recounting a series of text messages with Hadley, Lowery does not otherwise plead in her complaint that she requested to be put back in player's awards after being moved back to the floor. *See* Doc. 1-2 at 16.  If Lowery intended to include these facts in support of her failure-to-accommodate claim, she will have the opportunity to do so in an amended complaint. *See Brahim v. Holder*, 2014 WL 2918598, at *4 (S.D. Fla. June 26, 2014) (citing *Long v. Satz*, 181 F.3d 1275, 1278–79 (11th Cir. 1999)) ("It is axiomatic that a plaintiff may not amend his Complaint in response to a motion to dismiss.").

*Reynolds v. Golden Corral Corp.*, 106 F. Supp. 2d 1243, 1253–54 (M.D. Ala. 1999). Merely disagreeing with or opposing an employer's treatment generally does not constitute statutorily protected activity; the plaintiff's opposition must at least imply that the employer's treatment was in some way related to her membership in a protected class. *See Cox*, 2022 WL 22308805, at *32–33; *Reynolds*, 106 F. Supp. 2d at 1253–54.

After a plaintiff shows that she engaged in statutorily protected activity, she establishes a causal link between the activity and an adverse employment action by merely showing that the protected activity and the negative employment action are "not completely unrelated." *Shaling v. UPS Ground Freight*, 202 F. Supp. 3d 1283, 1293 (N.D. Ala. 2016). While "the causal link requirement under Title VII and the ADA must be construed broadly," *id.* (quoting *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)) (cleaned up), the plaintiff must, at a minimum, show that the adverse employment action happened after or contemporaneous with—and not before—the alleged statutorily protected activity. *See Gilliard v. Ga. Dept. of Corr.*, 500 F. App'x 860, 870 (11th Cir. 2012).

It is difficult to discern which events form the basis for Lowery's retaliation claim, but the crux of her complaint is that she was removed from the cash cage after a disagreement with Russell. *See* Doc. 1 at 5, 10; Doc. 1-1 at 10–11. Following this removal, she often was left off the work schedule because no seated positions were

19

available. *See* Doc. 1 at 6, 9 & 10; Doc. 1-1 at 10–11.  Assuming that removal from the cage and a diminished work schedule amount to an adverse employment action, Lowery does not plausibly suggest that either of these actions had any connection to statutorily protected activity.

In one of Lowery's attachments, she mentions that she "feel[s] that Mr. Russell is retaliating against [her] because of a previous conversation that we had last Sunday 6/2/2024 where I disagreed with him." Doc. 1 at 10.  Lowery's complaint mentions other details about this disagreement but does not claim that the disagreement had any connection to her race or her disability so as to constitute statutorily protected activity. *See* Doc. 1 at 5, 10.  Accordingly, her Title VII and ADA retaliation claims must be dismissed.

## C.    Leave to Amend

Although many of the allegations of the complaint are deficient, a district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted).  Where a more carefully drafted pleading might state a viable claim, a district court ordinarily should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d

20

1161, 1163 (11th Cir. 2001). However, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id*.

The court finds that none of these factors are present here, and therefore it will allow Lowery an opportunity to amend the complaint to attempt to state a claim against the JCRA. The court finds that the amendment of Lowery's claims against Russell and Hadley would be futile because, as explained above, any individual capacity claims fail as a matter of law and any official capacity claims are redundant.

## IV.  CONCLUSION

For these reasons, it is ORDERED as follows:

1.    Defendants' Motion to Dismiss (Doc. 11) is GRANTED and all claims in the complaint are DISMISSED without prejudice.

2.    Defendant's Motion to Strike (Doc. 25) is MOOT.

3.    Lowery shall file an amended complaint consistent with this Memorandum Opinion and Order no later than **March 11, 2025.** The amended complaint must be an entire stand-alone complaint and must set forth each and every allegation and claim against the JCRA without reincorporating allegations and claims from any other pleading. Lowery does not have leave to amend her Title VII and ADA claims against Hadley or Russell.

21

DONE and ORDERED on February 25, 2025.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE